UNITED STATES DISTRICT COURGT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| AMRO FARID,<br><br>    Plaintiff,<br><br>       v.<br><br>TRUSTEES OF DARTMOUTH COLLEGE,<br><br>    Defendants. | Civil Action No. 23-cv-426-SM |

**PLAINTIFF'S FIRST SET OF INTERROGATORIES TO DEFENDANTS**

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, the Plaintiff Amro Farid hereby requests that the Defendants Trustees of Dartmouth College respond to each of the following interrogatories separately and fully within the time required and in accordance with Rule 33.

## **DEFINITIONS**

1.    The definitions set forth in Rule 34(a) and included in the "Uniform Definitions in Discovery Requests" as set forth United States District Court of Massachusetts Local Rule 26.5(c), are hereby incorporated herein.

**Objection by counsel. Dartmouth will not incorporate any rules or definitions applicable in Massachusetts' courts. Dartmouth will construe the definitions in accordance with their ordinary English language usage and with the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the District of New Hampshire.**

1

2.      The terms "you", "your", "Defendant" or "Defendants" refer to each of the Defendants named in this action and their representatives, agents, and where applicable, their officers, partners, directors, municipal and/or corporate parents and subsidiaries.

**Objection by counsel. Dartmouth objects to this definition because it would render many or most of the Interrogatories exceedingly overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence given the scope of operations at Dartmouth, the number of individuals and custodians who would have to be included in any investigation needed to respond, and whose records would have to be searched, given the lack of any connection between the vast majority of individuals, departments, schools, business or other organizational units, to the matters at issue in this litigation. Dartmouth will construe these terms to encompass the Thayer School of Engineering, and, where applicable, the office of the Provost, the Office of Sponsored Projects, the Office of Research Integrity, the Irving Institute, and individuals serving on committees involved in the research misconduct process and the tenure process, including appeals.**

3.      The term "person" has the same meaning set forth United States District Court of Massachusetts Local Rule 26.5(c)(6), and also includes any individual, partnership, firm, association, corporation, government agency or other legal or business entity, including any predecessor entity.

**Objection by counsel. Dartmouth will not incorporate any rules or definitions applicable in Massachusetts' courts. Dartmouth will construe the definitions in accordance with their ordinary English language usage and with the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the District of New Hampshire.**

4.     The term "possession, custody, or control" means documents within Defendants' actual possession, custody, or control, as well as documents that are not in Defendants' actual possession, custody, or control, but of which Defendants have the right to obtain copies.

**Objection by counsel. To the extent that this definition purports to extend the legal meaning of the phrase "possession, custody or control," Dartmouth objects on the ground that this definition purports to expand the scope of discovery under Federal Rule of Civil Procedure 26. Dartmouth will only search for documents that are within its possession custody or control as that phrase is used in the Federal Rules of Civil Procedure and binding precedent interpreting same.**

5.     The term "Plaintiff" or "Farid" refers to the Plaintiff Amro Farid.

6.     The term "Complaint" refers to the Complaint filed in the United States District Court on or around September 11, 2023, as well as any amended complaints filed thereafter.

7.     The term "Answer" refers to Defendants' Answer to Plaintiff's Complaint filed in the United States District Court on or around November 13, 2023, as well as any amended answers filed thereafter.

8.     The term "NHHRC Response" refers to Defendants' February 14, 2022 response of the Defendants to the December 14, 2021 letter from the New Hampshire Human Rights Commission and accompanying Charge of Discrimination filed by Plaintiff.

9.     The term "IV-ACOPF paper" refers to the research manuscript by Plaintiff published under the title "A Profit-Maximizing Security-Constrained IV-AC Optimal Power Flow (IV-ACOPF) Model & Global Solution" in a journal on or about December 27, 2021.

10.    The terms "and," and "and/or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the Requests those documents that might otherwise be construed to be outside their scope.

**Objection by counsel on the grounds that this definition would render several interrogatories vague or meaningless, and would render the effort required to respond to same unduly broad, burdensome, and disproportional to the needs of the case. Dartmouth will not construe the terms "and" and "or" interchangeably and will respond to the Interrogatories as written.**

11.    As used herein, the term "document" or "documents" has the same meaning as specified in United States District Court of Massachusetts Local Rule 26.5(c)(2). It also means any and all things on or in which words, pictures, or other information is temporarily or permanently stored or contained, in Defendants' possession, custody, or control. "Documents" shall also include, without limitation, the originals and all non-identical copies (whether different from originals by reason of notations made on such copies or otherwise), or in lieu thereof, true and exact copies (regardless of whether in electronic or tangible form, origin or location) of any written, typed, printed, transcribed, taped, recorded, filmed, punched, stored on computer disk, or graphic matter of any kind, type or nature whatsoever, however produced or reproduced, including but not limited to contracts, proposals, statements and invoices, financial books and records, letters or other correspondence, telegrams, telex messages, memoranda and notes of telephone conversations, telephone logs, memoranda and notes of meetings and interviews, interoffice communications, instructions, notes, memoranda, reports, summaries, manuals, magnetic tapes, tabulations, records, work papers, research papers, books, journals, microfiche, microfilm, photographic film, surveys, charts, studies, data sheets,

4

desk calendars and diaries, policies, printed matter, work sheets and working papers, and all documentary materials of any nature whatsoever. **A draft or non-identical copy is a separate document within the meaning of this term.** For instance, and only by way of example, a request for documents related to Plaintiff's job descriptions seeks each and every document during the relevant time period related to his job descriptions, not only documents related to his current job or the most current version of a job description.

**Objection by counsel. Dartmouth will not incorporate any rules or definitions applicable in Massachusetts' courts. Dartmouth will construe the definitions in accordance with their ordinary English language usage and with the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the District of New Hampshire. Further objection only to the extent that this definition may be construed to require the production of documents in a manner that would be inconsistent with the ESI Protocol negotiated by counsel.**

12.     The term "communication" has the same meaning as set forth in United States District Court of Massachusetts Local Rule 26.5(c)(1). It also means the transmittal of information (in the form of facts, ideas, inquiries, opinions and otherwise) including but not limited to any verbal, written or electronic transmission.

**Objection by counsel. Dartmouth will not incorporate any rules or definitions applicable in Massachusetts' courts. Dartmouth will construe the definitions in accordance with their ordinary English language usage and with the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the District of New Hampshire.**

## **INSTRUCTIONS**

1.      No interrogatory shall be refused to be answered based on any claim or belief by you that such information is already in Plaintiff's knowledge.

**Objection by counsel on the grounds that this Instruction would expand Dartmouth's obligations under Federal Rule of Civil Procedure 33. Dartmouth reserves the right to lodge and rely upon appropriate objections, including, without limitation, the objection contemplated by Federal Rule of Civil Procedure 33(d).**

2.      If Defendants contend that the requested information is privileged or otherwise not subject to discovery, identify the subject of information and state in the response to the request the grounds upon which it is contended the documents are not subject to discovery. In addition, with respect to any document for which a privilege is claimed, describe the following:

a.      the nature and contents of the document;

b.      the date on which such document was prepared, by whom it was prepared (name and job title), and all persons to whom the document has been disclosed (names and job titles); and

c.      the present location and custodian of such document.

3.      The Interrogatories are continuous; thus Answers to these Interrogatories are to be supplemented as required.

## **INTERROGATORIES**

1.      State the full name of the person(s) answering these interrogatories, residential and business address, date of birth, his/her position and/or title, dates of employment with Defendant, and current employer, and the same information for any person who provided

information for the purpose of answering these interrogatories. Please set forth the capacity in which such person responds to these interrogatories.

**Objection by counsel to the extent that this Interrogatory purports to call for dates of birth and residential addresses of persons identified, as this information is not reasonably calculated to lead to the discovery of admissible evidence, or is sought for the purpose of burdening or harassing individual witnesses at Dartmouth. If a legitimate, good-faith need to obtain this information can be articulated, counsel will discuss a method of providing this information in a way that it can be covered by the Protective Order filed by Dartmouth.**

**ANSWER**

1.) Alexis Abramson, Dean of the Thayer School of Engineering. I may be contacted through my counsel. I answered these interrogatories in my role as the Dean of the Thayer School of Engineering, and as an authorized agent for Dartmouth.

2.) I received information to respond to these interrogatories from

    a.  Kristi Clemens, the Assistant Vice President for Equity and Compliance and Title IX Coordinator at Dartmouth College. Ms. Clemens may be contacted through counsel.

    b.  Cheryl Guerin, Associate Vice President Human Resources at Dartmouth College. Ms. Guerin may be contacted through counsel.

    c.  Henrike Frowein, Director of Research Integrity, Dartmouth College. Ms. Frowein may be contacted through counsel.

    d.   **Dean Madden, Vice Provost for Research and Professor of Biochemistry and Cell Biology, Dartmouth College. Dr. Madden may be contacted through counsel.**

    e.   **Jill Mortali, Director of Sponsored Projects at Dartmouth College. Ms. Mortali may be contacted through counsel.**

    f.   **Elizabeth J. Wilson, Professor of Environmental Studies at Dartmouth College. Professor Wilson may be contacted through counsel.**

2.    Please describe in as much detail as possible any allegations, complaints, or claims, regardless of their formality, that were brought to the attention of Defendant concerning alleged discrimination on the basis of Arab national origin or Islamic religion against professors or students during the time period of Plaintiff's employment. For each instance an allegation, complaint, or claim was brought to your attention, state:

    a.    the name of the person bringing the allegations, complaint(s) or claim(s);

    b.    a description of the allegations, complaint(s), or claim(s);

    c.    the approximate date of the allegation(s), complaint(s), or claim(s);

    d.    whether any action that resulted from the allegation(s), complaint(s), or claim(s);

    e.    and the parties, case number, court, and jurisdiction of any resulting legal proceedings, if any.

**Objection by counsel on the basis that, as worded, this Interrogatory would require an investigation that would be unduly burdensome and out of proportion to the possible relevance of any responsive information, given both the size and scope of Dartmouth's**

operations and the inclusion of the phrase "regardless of their formality." Dartmouth will respond as though this Interrogatory sought information about complaints, allegations or claims that are sufficiently specific to identify them as alleging discrimination on the basis of national origin or religion, and of sufficient formality that a record would be made concerning same, as gathering information about every informal discussion, conversation, or communication between and among faculty and students throughout Dartmouth would require an effort out of proportion to the utility of responsive information. Dartmouth will respond as though the interrogatory was limited to the Thayer School of Engineering, and with a date restriction from January 1, 2015 to present. Further objection on the basis that the use of the term "in as much detail as possible" renders the interrogatory unduly broad, burdensome and out of proportion to the issues raised in this litigation. Dartmouth will respond with a reasonable degree of detail but will not endeavor to identify every bit of minutia or every cumulative detail that may arguably be responsive to this Interrogatory.

ANSWER

Subject to the objection above, and other than the present claim raised by Plaintiff, no such allegations, complaints or claims were identified.

3.    Please describe in as much detail as possible the policies, practices, and procedures for reviewing a faculty candidate for grant of tenure at the Thayer School of Engineering.

Objection by counsel on the basis that the information sought can be examined, audited, compiled, abstracted, or summarized from Dartmouth's policy manuals by Plaintiff with substantially the same effort as would be required for Dartmouth to do so. See Fed. R. Civ. Pro. 33(d). Further objection on the basis that

9

the use of the term "in as much detail as possible" renders the interrogatory unduly broad, burdensome and out of proportion to the issues raised in this litigation. Dartmouth will respond with a reasonable degree of detail but will not endeavor to identify every bit of minutia or every cumulative detail that may arguably be responsive to this Interrogatory.

ANSWER

Subject to the objection above, Section 9 of the Thayer School of Engineering Faculty Handbook, "Faculty Reappointment, Promotion and Tenure" contains relevant policies, as does the Handbook of the Faculty of Arts and Sciences, in the Section labeled "Tenure and Promotion to Associate Professor." The *Agreement Concerning Academic Freedom, Tenure, and Responsibility of Faculty Members Voted by the Board of Trustees (January 15, 1971) after approval by the Faculty (October 19, 1970) as amended June 12, 2009*, specifically Section 2, likewise contains relevant policy language. The practices and procedures employed at the Thayer School of Engineering for reviewing a candidate for tenure are described in the Thayer School of Engineering Faculty Handbook sections 9(A), (C), and (F), and such other sections as are referred to or incorporated by reference in those sections.

4.      Please describe in as much detail as possible the standard years of employment as an associate professor that Dartmouth requires at the Thayer School of Engineering before candidacy for tenure.

Objection by counsel on the basis that the information sought can be examined, audited, compiled, abstracted, or summarized from Dartmouth's policy manuals by Plaintiff with substantially the same effort as would be required for

Dartmouth to do so. *See* Fed. R. Civ. Pro. 33(d). Further objection on the basis that
the use of the term "in as much detail as possible" renders the interrogatory unduly
broad, burdensome and out of proportion to the issues raised in this litigation. Dartmouth
will respond with a reasonable degree of detail but will not endeavor to identify every bit
of minutia or every cumulative detail that may arguably be responsive to this
Interrogatory.

     ANSWER

     Subject to the objection above, the usual timeline for a tenure-track professor to
apply for tenure at the Thayer School of Engineering is described in the Handbook of the
Faculty for Arts & Sciences, in the Section "Tenure Track Appointment," in Section 2 of
*Agreement Concerning Academic Freedom, Tenure, and Responsibility of Faculty Members Voted by
the Board of Trustees (January 15, 1971) after approval by the Faculty (October 19, 1970) as
amended June 12, 2009*, and in Section 9(D) of the Thayer School of Engineering Faculty
Handbook. Some additional timing considerations are described in Section 9(B) of the Thayer
School of Engineering Faculty Handbook, formerly designated section 9(C) in the 2020 Handbook
applicable to Plaintiff's tenure application, and the Section of the Arts & Sciences Faculty
Handbook "Extensions and postponement." Variations to the ordinary timeline are permitted as
described in the foregoing materials.

    5.    Please describe in as much detail as possible any policies or practices concerning
tenure-track assistant or associate professors participation in extracurricular activities and on-
campus faculty service, including but not limited to participating in activities at the Tucker
Center for Spiritual Life.

**Objection by counsel on the basis that the information sought can be examined, audited, compiled, abstracted, or summarized from Dartmouth's policy manuals by Plaintiff with substantially the same effort as would be required for Dartmouth to do so.** *See* **Fed. R. Civ. Pro. 33(d). Further objection on the basis that the use of the term "in as much detail as possible" renders the interrogatory unduly broad, burdensome and out of proportion to the issues raised in this litigation. Dartmouth will respond with a reasonable degree of detail but will not endeavor to identify every bit of minutia or every cumulative detail that may arguably be responsive to this Interrogatory.**

**ANSWER**

**Subject to the objection above, the policies and practices of Thayer concerning extracurricular commitments are set forth in Section 9(A) of the Thayer School of Engineering Faculty Handbook.**

6.      Please describe in as much detail as possible any communications concerning the initial funding for the Irving Institute, including but not limited to the "preliminary conversations" referred to in Answer to Paragraph 11 of the Complaint.

**Objection by counsel on the basis that the information sought can be examined, audited, compiled, abstracted, or summarized from Dartmouth's business records, namely applicable emails, by Plaintiff with substantially the same effort as would be required for Dartmouth to do so.** *See* **Fed. R. Civ. Pro. 33(d). Further objection on the basis that the use of the term "in as much detail as possible" renders the interrogatory unduly broad, burdensome and out of proportion to the issues raised in this litigation. Dartmouth will respond with a reasonable degree of detail but will not endeavor to identify every bit of minutia or every cumulative detail that may arguably be responsive to this Interrogatory.**

**ANSWER**

**Subject to the objection above, I do not believe that Plaintiff would have been involved in preliminary conversations concerning the funding for the Irving Institute, but rather in preliminary conversations with respect to the Irving Institute's collaboration with the U.S. Army Corps of Engineers' Cold Regions Research and Engineering Laboratory.**

7.    Please state the basis in as much detail as possible for the assertion in Answer to Paragraph 22 of the Complaint that it is a "*widely-known fact* that applying for tenure is an 'up or out' proposition resulting in a terminal appointment if the application is not approved." (Emphasis added).

**Objection by counsel to the extent that this Interrogatory seeks a legal opinion. Dartmouth will respond by providing facts reasonably known to it supporting the conclusion at issue, but counsel reserves the right to employ different or additional facts, particularly in the context of rebutting or impeaching the testimony of the Plaintiff or any expert witnesses he may disclose. Further objection on the basis that the use of the term "in as much detail as possible" renders the interrogatory unduly broad, burdensome and out of proportion to the issues raised in this litigation. Dartmouth will respond with a reasonable degree of detail but will not endeavor to identify every bit of minutia or every cumulative detail that may arguably be responsive to this Interrogatory.**

**ANSWER**

**Subject to the objection above, the Handbook of the Faculty of Arts and Sciences applicable at the time the Plaintiff was seeking his tenure vote clearly stated that "the committee must recommend either promotion with tenure or a one-year terminal**

13

appointment at the rank of Assistant Professor." The Thayer School of Engineering Faculty Handbook in force at the time that the Plaintiff applied for tenure also clearly indicated this fact, noting, in Section 9(F) that "[t]he Dean's letter must recommend *either promotion with tenure* (or simply tenure if already at the Associate Professor level) *or a one-year terminal appointment* at the current rank."

8.    Please describe, in as much detail as possible, the basis for denying Plaintiff tenure, including, without limitation, every fact about his record of funding and research expenditures as referenced in Paragraph of 26 of the Complaint and the Answer that caused you to deny tenure.

**Objection by counsel on the basis that the information sought can be examined, audited, compiled, abstracted, or summarized from Dartmouth's business records, namely applicable emails, by Plaintiff with substantially the same effort as would be required for Dartmouth to do so. *See* Fed. R. Civ. Pro. 33(d). Further objection on the basis that the use of the term "in as much detail as possible" renders the interrogatory unduly broad, burdensome and out of proportion to the issues raised in this litigation. Dartmouth will respond with a reasonable degree of detail but will not endeavor to identify every bit of minutia or every cumulative detail that may arguably be responsive to this Interrogatory.**

**ANSWER**

**Subject to the objection above, the reasons for the tenure denial are those set forth in the Dean's May 2, 2020 letter to the Committee Advisory to the President, and the confidential portion of the faculty meeting minutes pertaining to the deliberation of the Plaintiff's tenure case. I understand that counsel will produce those documents subject to an appropriate Protective Order.**

9.      Please describe, in as much detail as possible, the record of funding and scholarly output of Professor Vikrant Vaze as referenced in Paragraph 27 of the Complaint and Answer.

**Objection by counsel on the basis that the information sought can be examined, audited, compiled, abstracted, or summarized from Dartmouth's business records, namely applicable emails, by Plaintiff with substantially the same effort as would be required for Dartmouth to do so.** *See* **Fed. R. Civ. Pro. 33(d). Further objection on the basis that the use of the term "in as much detail as possible" renders the interrogatory unduly broad, burdensome and out of proportion to the issues raised in this litigation. Dartmouth will respond with a reasonable degree of detail but will not endeavor to identify every bit of minutia or every cumulative detail that may arguably be responsive to this Interrogatory.**

**ANSWER**

**Subject to the objection above, Professor Vaze's record of scholarship and funding is best ascertained by examining his tenure file, a copy of which I understand that counsel will produce subject to an appropriate Protective Order.  A summary of Professor Vaze's scholarship is contained in the Dean's April 3, 2020 letter to the Committee Advisory to the President, under the heading "Assessment of Scholarship." Again, I understand that this document and the underlying materials will be produced by counsel.**

10.      Please describe, in as much as detail as possible, the basis for the decision not to approve the request by Plaintiff to sub-contract his ARIIES grant to the Massachusetts Institute of Technology, as described in Paragraph 35 of the Complaint and Answer.

Objection by counsel on the basis that the use of the term "in as much detail as possible" renders the interrogatory unduly broad, burdensome and out of proportion to the issues raised in this litigation. Dartmouth will respond with a reasonable degree of detail but will not endeavor to identify every bit of minutia or every cumulative detail that may arguably be responsive to this Interrogatory.

**ANSWER**

Subject to the objection above, after internal communications with Jill Mortali, the Director of Sponsored Projects at Dartmouth and with representatives of the Irving Institute, we determined that the grant was primarily intended to support research in New Hampshire, and that the awards and contracts in question were awarded to Dartmouth, and not to any individual faculty member. With respect to the ARIIES grant, Professor Farid was not the Principal Investigator or Project Director, rather, Elizabeth Wilson was the Principal Investigator. In addition, I understand that the Office of Sponsored Projects and the Irving Institute considered the fact that creating a subaward to transition a portion of the funds for the larger award would have required discussion and approval from the Cold Regions Research and Engineering Laboratory, which would have imposed additional burdens on them. The relevant contract involved several projects which were described in the proposal and the award and involved activities to be performed at Dartmouth College. The pre-proposal for the contract noted Dartmouth College's capabilities to "develop new materials, test new technologies and develop system solutions that will directly support military missions.  Its close proximity to CRREL will enhance collaboration, ensure a focus on military needs, and promote early testing and refinement. Dartmouth's vibrant professional schools enhance its capacity to test the

commercial viability of advanced energy technologies and system configurations and promote direct benefit for both military and civilian applications in one of the coldest regions of the continental United States."

It is my understanding that, after considering all of these factors, the leadership of the Irving Institute ultimately directed the Office of Sponsored Projects not to transfer the grant money in question to the Massachusetts Institute of Technology. I note that for my part, I also questioned whether Professor Farid's appointment at MIT would permit him to perform the work in question there, given his ongoing employment at Dartmouth at that time.

11.    Please describe, in as much as detail as possible, the basis for the decision not to approve the request by Plaintiff to transfer the ARIIES grant to Stevens Institute of Technology, as described in Paragraph 36 of the Complaint and Answer.

Objection by counsel on the basis that the use of the term "in as much detail as possible" renders the interrogatory unduly broad, burdensome and out of proportion to the issues raised in this litigation. Dartmouth will respond with a reasonable degree of detail but will not endeavor to identify every bit of minutia or every cumulative detail that may arguably be responsive to this Interrogatory.

ANSWER

Subject to the foregoing objection, please see the answer above, except for the final sentence. Dartmouth did transfer research funds for research projects on which Professor Farid was the Principal Investigator, where the aims of the award were solely focused on his research, and where transferring the award would not impose the additional

**administrative burden of creating a subaward. Specifically, an award from the National Science Foundation was transferred to the Stevens Institute of Technology on Professor Farid's request.**

12.     Please state the basis for your assertion that you were "compelled to open a formal research misconduct inquiry," as stated in Answer to Paragraph 46. Include in your answer:

a.     every fact that Defendant relied upon when making the decision to open the inquiry:

b.     every individual with knowledge of the fact(s) which were relied by Defendants in making its decision;

d.     all documents that were consulted by Defendants in making its decision, and the most specific part, section, or words consulted on any such document; each and every individual who participated in any way in the decision-making process;

e.     the role each identified individual had in the decision;

f.     the date on which the decision was made;

g.     the individual(s) with final authority to make the decision.

**Objection by counsel on the basis that the information sought can be examined, audited, compiled, abstracted, or summarized from Dartmouth's business records, namely applicable emails, by Plaintiff with substantially the same effort as would be required for Dartmouth to do so. *See* Fed. R. Civ. Pro. 33(d). Further objection on the basis that the use of the term "in as much detail as possible" renders the interrogatory unduly broad, burdensome and out of proportion to the issues raised in this litigation. Dartmouth will respond with a reasonable**

degree of detail but will not endeavor to identify every bit of minutia or every cumulative detail that may arguably be responsive to this Interrogatory.

**ANSWER**
The Research Misconduct Policies and Procedures document applicable in the applicable timeframe (approximately January, 2022) spells out the procedure to determine whether an Inquiry is warranted following a preliminary assessment of an allegation of research misconduct. In this instance, Alexis Abramson, in her role as Dean of the Thayer School of Engineering, and Dean Madden, in his role as the designee for the Provost, met on or around February 7, 2022, and determined that the allegations made by Mr. Hegde fell within the scope of "Research Misconduct" and were sufficiently detailed and specific to warrant an inquiry under the Research Misconduct Policies and Procedures document. This was recorded in an email on February 8, 2022. Professor Madden and Dean Abramson had the authority to make this determination given their unanimous assessment that an inquiry was warranted.

The RMPP document requires the Provost or his or her designee, and "any other College official with an assigned responsibility" to make "diligent efforts" to ensure that "any assessment, Inquiry, or Investigation is conducted in a timely, objective, *thorough*, and competent manner." RMPP at Section III (E) (emphasis added). Additionally, although I cannot provide a legal opinion, Dartmouth believes that 45 CFR 689 likely informs the RMPP document and sets forth a legal standard that requires Dartmouth to implement and follow this written process.

13.     Please state the basis, in as much detail as possible, for the decision to report the

allegation of Prabhat Hegde against Plaintiff concerning the IV-ACOPF paper to the National Science Foundation. If your answer involves the use of federal research funds, please describe your complete understanding of the disbursement of research funds to Mr. Hegde for his work on the IV-ACOPF paper.

**Objection by counsel to the extent that this Interrogatory calls for a legal opinion. Dartmouth will supply the factual bases known to it supporting its determination that a sufficient nexus existed to a federal funding source to warrant a report to the National Science Foundation, but its designee will not provide any legal opinions concerning this determination. Further objection on the basis that the use of the term "in as much detail as possible" renders the interrogatory unduly broad, burdensome and out of proportion to the issues raised in this litigation. Dartmouth will respond with a reasonable degree of detail but will not endeavor to identify every bit of minutia or every cumulative detail that may arguably be responsive to this Interrogatory.**

**ANSWER**

**Subject to the objection above, Dartmouth determined that part of Mr. Hegde's salary as a research assistant was being paid from National Science Foundation Award No. CMMI-1745385 at the time he was doing the computations and drafting that are at issue in the research misconduct proceedings. Although Professor Farid requested that these expenditures be reallocated to a different funding source after the fact, I understand that the original allocation was approved by Professor Farid. Dartmouth determined that the retroactive reallocation was not sufficient to remove any nexus to federal funding. Given that nexus, Dartmouth determined that Federal regulations required that NSF be informed once an Investigation was launched. NSF did ask Dartmouth to determine, as part of its process, whether Professor**

Farid should have acknowledged NSF funding in connection with the subject research paper, as noted in its July 5, 2023 letter.

14.     Please describe, in as much detail as possible, all communications with Prabhat Hegde concerning Plaintiff and the IV-ACOPF paper, including but not limited to any communications that refer to questions of authorship or allegations of research misconduct. Include in your answer: the date of each communication; the persons involved in the communication; and the substance of the communication.

**Objection by counsel on the basis that the information sought can be examined, audited, compiled, abstracted, or summarized from Dartmouth's business records, namely applicable emails, by Plaintiff with substantially the same effort as would be required for Dartmouth to do so.** *See* **Fed. R. Civ. Pro. 33(d). Further objection on the basis that the use of the term "in as much detail as possible" renders the interrogatory unduly broad, burdensome and out of proportion to the issues raised in this litigation. Dartmouth will respond with a reasonable degree of detail but will not endeavor to identify every bit of minutia or every cumulative detail that may arguably be responsive to this Interrogatory.**

**ANSWER**

**Except as noted below, I understand after a reasonable investigation that all communications with Mr. Hegde would have been in writing, by email, or would have been captured by being transcribed (as when Mr. Hegde gave interviews or testimony during the RMPP process). I understand that counsel will produce the written communications or transcripts.**

**I had preliminary Zoom, telephone or in person communications about the research misconduct process with Mr. Hegde prior to the initiation of formal proceedings, and Dean Madden and Holly Wilkinson had similar communications by Zoom, telephone or in person.**

Additionally, Mr. Hegde had telephone conversations with Esther C.H. Walker in the Office of the General Counsel between August 17 and 28, 2023, regarding his concerns about receiving direct communications from Professor Farid's lawyer at his residential address during the research misconduct process.

Respectfully submitted,
PLAINTIFF AMRO FARID
By his attorneys,

/s/ Joseph Sulman
Joseph L. Sulman, BBO #663635
Law Office of Joseph L. Sulman, Esq.
255 Bear Hill Road, Suite 204
Waltham, MA 02451
(617) 521-8600
jsulman@sulmanlaw.com


/s/ Mark M. Whitney
Mark M. Whitney, NH Bar No. 11892
WHITNEY LAW GROUP, LLC11 State Street
Marblehead, MA 01945
(781) 631-4400
E: mwhitney@whitneylawgroup.com

February 14, 2024

## CERTIFICATE OF SERVICE

I hereby certify that I served this document on counsel for Defendants by electronic-mail on February 14, 2024

/s/ Joseph Sulman
Joseph Sulman

AS TO THE OBJECTIONS:

Respectfully submitted,

TRUSTEES OF DARTMOUTH COLLEGE

By its attorneys,

DEVINE, MILLIMET & BRANCH, PA

Date: April 19, 2024

/s/ Pierre Chabot
Pierre Chabot, Esq., No. 17606
111 Amherst Street
Manchester, NH 03101
603-695-8780
pchabot@devinemillimet.com

**AS TO THE RESPONSES**

Date: April 30, 2024

Alexis Abramson, Dean
Thayer School of Engineering
Dartmouth College

**STATE OF NEW HAMPSHIRE**
**COUNTY OF GRAFTON**

Alexis Abramson appeared before me this 30th day of April, 2024, and verified that the above

Interrogatory Responses were true and correct to the best of her ability and belief following an

investigation that was reasonable under the circumstances, and further, that she was authorized to

act on behalf of Trustees of Dartmouth College in giving this verification.

_____
Notary Public/Justice of the Peace
My Commission Expires: 8/14/2024

24