# New Hampshire Commission for Human Rights



**COMMISSIONERS**
CHRISTIAN KIM, CHAIR
DOUGLAS PALARDY
HARVEY KEYE
ALEX SAMUEL
NANCY LEROY
BASRA MOHAMED
ELIZABETH ASCH

2 INDUSTRIAL PARK DRIVE, BLDG.1
CONCORD, NEW HAMPSHIRE 03301
TEL (603) 271-2767
TDD Access: Relay NH 1-800-735-2964
FAX (603) 271-6339
E-MAIL: humanrights@nh.gov
www.nh.gov/hrc

**EXECUTIVE DIRECTOR**
AHNI MALACHI

**ASSISTANT DIRECTOR**
SARAH E. BURKE COHEN, ESQ.

**INVESTIGATORS**
KATRINA E. TAYLOR
NICOLE LEMELIN
DANIEL DEYERMOND
KATE MULLEAVEY
LURA SEAVEY

**INTAKE COORDINATOR**
JOHANNA "JONNA" ALLARD

**PARALEGAL**
KELLY MEDEROS

**SECRETARY**
ROBIN LAVALLEY

December 14, 2021

Office of General Counsel
Dartmouth College
63 South Main Street, Suite 301
Hanover, NH 03755

RE:   Amro Farid v. Dartmouth College & Trustees of Dartmouth College
      ENOF(R) 0027-22     16D-2022-00027

Dear Sir or Madam:

The enclosed Charge of discrimination has been received and docketed by the New Hampshire Commission for Human Rights. The Commission is the state agency granted authority by statute (RSA 354-A) to receive and investigate claims such as the enclosed.

Please submit a written response to the Charge. Any allegation in the complaint which is not denied in the answer shall be deemed admitted. This response **MUST BE VERIFIED** by the Respondent (signed and sworn, or affirmed, before a notary public or justice of the peace), and shall include at least the following:

(a) Has the Respondent been named in the Charge by its correct legal name? If not, provide the correct name and spelling of the legal entity that owns the Respondent in your Answer to the Charge. In addition, state the legal status of your organization, e.g. corporation, partnership, sole proprietor, limited liability corporation, non-profit corporation, etc.;

(b) The name and address of Respondent and of Respondent's attorney if represented by counsel;

Please note Commission for Human Rights rules (Hum 204 and Hum 303) require approval of a request to appear *pro hac vice* before an attorney who is not a member in good standing of the New Hampshire Bar Association may appear on behalf of a client at the Commission. Please review the text of those rules on the Commission website, www.nh.gov/hrc, and comply with them if they apply to your situation. An attorney who represents a client *pro hac vice* shall be present and accompanied by the New Hampshire attorney who has filed appearance at all conferences, meetings and hearings.

(c) For each allegation of the Charge contested by the Respondent, state a general or specific denial, or a statement that the Respondent is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegation;

(d) Any affirmative defenses that the Respondent wishes to raise;

(e) A copy of the Complainant's complete personnel file. "Personnel file" as used in RSA 275.56 means any and all personnel records created and maintained by an employer and pertaining to an employee including and not limited to employment applications, internal evaluations, disciplinary documentation, . . . and performance assessments, whether maintained in one or more locations, unless such records are exempt from disclosure under RSA 275.56, III or are otherwise privileged or confidential by law. The term does not include recommendations, peer evaluations or notes not generated or created by the employer. Lab 802.09. **Do not include** benefit, payroll or I-9 documents unless specifically requested.

If this is a disability or pregnancy related charge produce the medical file for the complainant.

The Commission for Human Rights' statute and rules govern what documents are to be provided for the purpose of investigating charges of discrimination. See, RSA 354-A:5 (VII); PART Hum 102 and 207.02.

**It is your duty as Respondent** to **redact any and all references to Complainant's date of birth, social security number or any other personal identifiers wherever located** before submitting the personnel file to the Commission.

(f) A copy of the Respondent's anti-discrimination policy and all personnel policies in effect at the time of the Complainant's employment;

(g) Provide a copy of an organizational chart and a statement or documents describing the structure of any relationship to any subsidiaries or parent organizations, if applicable;

(h) For any organization claiming they have fewer than 20 employees, indicate the largest number of employees in your organization (full-time, part-time, temporary or seasonal) on any one day in the six months prior to the date stamp on the charge and provide supporting documentation;

(i) A complete list of witnesses you believe will support your position. Include their name, position, contact information and a **brief description of the information each is expected to provide the investigator.** You may request this list remain confidential at this time and need not provide it to the Complainant;

(j) Is Respondent currently under any consent decree or conciliation with another state fair employment practice agency or the Equal Employment Opportunity Commission? If yes, submit a copy of all agreements, and

(k) Is the Respondent a federal contractor as defined by the Office of Federal Contract Compliance (OFCCP)? www.dol.gov/ofccp

You may submit additional documentary evidence in support of your answer at this time.

**IMPORTANT**

You are required to preserve any and all evidence in connection with this Charge of Discrimination including, but not limited to, documents such as payroll records, notes, letters, applications, certificates, transcripts, disciplinary notices, witness statements, investigation reports, personnel records, email, instant messaging, voice mail messaging, dvd, cd, videotape, text messaging, any electronic media whatsoever including but not limited to hard drives, removable drives, external drives, objects, posters, magazines, postcards, cartoons, or any other thing that could possibly be probative of the allegations, charges, claims and defenses in this matter.

**This response is due at the Commission by Friday, January 14, 2022. Provide Complainant a copy of the response and all non-confidential materials submitted to the Commission. (If Complainant is represented by counsel, send him or her a copy of the response instead, at the address included in the charge.) In your response, certify that you have done so.**

For your information, NH RSA 354-A:19 prohibits retaliation for filing a complaint or for testifying or assisting in any proceeding under this chapter

The Commission offers the parties voluntary mediation. A brochure describing the mediation program is enclosed. If you are interested in further information about the mediation program, please feel free to contact Katrina Taylor at (603) 271-2055, or via email, Katrina.E.Taylor@hrc.nh.gov.

Until an investigator is assigned to this case, please submit your response and all documents and information to:

> **Johanna C. Allard, Intake Coordinator**
> **NH Human Rights Commission**
> **2 Industrial Park Drive, Bldg 1**
> **Concord, NH   03301-8501**
> **603 271-6839**
> Johanna.C.Allard@hrc.nh.gov

Sincerely,

*[signature]*

Sarah E. Burke Cohen
Assistant Director
SBC/kt

enc.

cc:   Joseph Sulman, Esq.

EEOC Form 5 (11/09)

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| [x] FEPA | ENOF(R) 0027-22 |
| [ ] EEOC | 16D-2022-00027 |

**New Hampshire Commission on Human Rights** and EEOC
*State or local Agency, if any*

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Amro Farid | [redacted] | [redacted] |

Street Address [redacted]   City, State and ZIP Code

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| Dartmouth College and Trustees of Dartmouth College | 15+ | +1 (603) 646-2230 |

Street Address: 14 Engineering Drive, Hanover, NH 03755

**DISCRIMINATION BASED ON** (Check appropriate box(es).)

[ ] RACE  [ ] COLOR  [ ] SEX  [x] RELIGION  [x] NATIONAL ORIGIN
[x] RETALIATION  [ ] AGE  [ ] DISABILITY  [ ] GENETIC INFORMATION
[ ] OTHER (Specify)

**DATE(S) DISCRIMINATION TOOK PLACE**
Earliest: 6/4/2021   Latest: 10/1/2021
[ ] CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

PLEASE SEE ATTACHED PARTICULARS

RECEIVED
NOV 30 2021
NH Commission for Human Rights

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

Date: 11/29/2021
Charging Party Signature: /s/ Amro Farid

NOTARY — When necessary for State and Local Agency Requirements

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year)
11/29/2021

[Notary seal: Heather Powers, State of New Hampshire, My Commission Expires April 8, 2025]

I declare under penalty of perjury that the above is true and correct.

000004

EEOC Form 5 (11/09)

| | | |
|---|---|---|
| **CHARGE OF DISCRIMINATION**<br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | Charge Presented To:<br>[X] FEPA<br>[ ] EEOC | Agency(ies) Charge No(s):<br>ENOF(R) 0027-22<br>16D-2022-00027 |

New Hampshire Commission on Human Rights and EEOC
*State or local Agency, if any*

Name (indicate Mr., Ms., Mrs.): **Amro Farid**
Home Phone (Incl. Area Code): [redacted]
Date of Birth: [redacted]
Street Address: [redacted]
City, State and ZIP Code: [redacted]

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

Name: **Dartmouth College and Trustees of Dartmouth College**
No. Employees, Members: **15+**
Phone No. (Include Area Code): **+1 (603) 646-2230**
Street Address: **14 Engineering Drive, Hanover, NH 03755**

DISCRIMINATION BASED ON *(Check appropriate box(es).)*:
[ ] RACE  [ ] COLOR  [ ] SEX  [X] RELIGION  [X] NATIONAL ORIGIN
[X] RETALIATION  [ ] AGE  [ ] DISABILITY  [ ] GENETIC INFORMATION
[ ] OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: 6/4/2021
Latest: 10/1/2021
[ ] CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s))*:

PLEASE SEE ATTACHED PARTICULARS

RECEIVED
DEC 10 2021
NH Commission for Human Rights

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

Date: 11/29/2021
Charging Party Signature: *[signed] Amro Farid*

NOTARY – When necessary for State and Local Agency Requirements
*[signed] Heather M Powers*

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year)
11/29/2021

*[Notary seal: HEATHER POWERS, STATE OF NEW HAMPSHIRE, MY COMMISSION EXPIRES APRIL 8, 2025, COMMISSIONER OF DEEDS]*

I declare under penalty of perjury that the above is true and correct.

000005

Attachment to Charge of Discrimination by Amro Farid, Ph.D.

*Background*

1.  Prof. Farid's national origin is Arab-Egyptian although he was born in New York City. He is a practicing Muslim.

2.  Prof. Farid has a doctorate degree from the University of Cambridge (Cambridge in the United Kingdom, a Master's degree from the Massachusetts Institute of Technology (MIT), and an undergraduate degree from MIT as well. He is a leading expert in the application of control, automation, and operations research to intelligent multi-energy engineering systems. He directs the Laboratory for Intelligent Integrated Networks of Engineering Systems (LIINES) at the Thayer School of Engineering (Thayer) at Dartmouth.

3.  The most recent Muslim professor at the Thayer School, Prof. Reza Olfati-Saber, was denied tenure despite being a recipient of the Presidential Early Career Award for Scientists and Engineers, the highest honor bestowed by the United States government on outstanding early-career scientists and engineers, and despite being widely-considered one of the leading experts in engineering systems and controls.

*Appointment*

4.  In 2015, Prof. Farid joined Dartmouth's faculty as an associate professor on the tenure-track at the Thayer School of Engineering. He had previously served as an assistant professor role at another university.

5.  Under the Faculty Handbook, Dartmouth appoints tenure track professors joining at the associate level to a term of four years, with tenure review coming at the end of year three. Yet Dartmouth appointed Prof. Farid in 2015 to a three-year term with the expectation that he would be appointed to a second three-year term with his tenure review beginning no later than the final year of his *second* three-year term. This was the equivalent to the original appointment of an assistant professor.

6.  Since his appointment to Thayer, Prof. Farid has experienced discrimination based on his religion and/or national origin in persistent, systemic ways.

7.  Soon after his appointment Prof. Farid was discouraged from serving in a leadership position as a professor-advisor for a Muslim student organization.

1

8.  In 2015, Dartmouth did not have a Muslim Student Advisor at Dartmouth after the last one had resigned in 2014; since then, Muslim students had gathered on their own in a Muslim student association called "Al-Nur" (meaning The Light). In the fall of 2016, Rabbi Daveen Litwin, Dean and Chaplain of Dartmouth's Tucker Center for Spiritual and Ethical Life, approached Prof. Farid and his wife and colleague, Prof. Inas Khayal, and invited them both to serve as Muslim Student Advisors (a volunteer position), recognizing the different needs of male and female Muslim students.

9.  When Dean Joseph Helble learned about Prof. Farid's involvement in Al-Nur, Helble approached Prof. Farid in Prof. Farid's office for an unannounced after-business-hours meeting. Dean Helble (who served as Thayer Dean when Prof. Olfati-Saber was denied tenure) asked Prof. Farid about his involvement in Al-Nur and what proportion of the Muslim student body was engineering students. When Prof. Farid explained that in the absence of data there is no reason to believe that Muslim students were over or underrepresented at the Thayer school, Dean Helble thanked Prof. Farid for his input but warned not to get too involved in Al-Nur lest it distract him from his tenure case. He told Prof. Farid that he could do more after his tenure review.

10.  Dean Helble became Dartmouth's Provost in July 2018 and continued to serve in that capacity until June 2021. In 2019, Prof. Khayal raised concerns about inequitable funding and resources provided to her since her appointment to the faculty in 2016. Like Prof. Farid, she is Muslim. Provost Helble did not respond to her concerns.

11.  In or around 2017, Dartmouth began a project to design new campus buildings using clean energy and integrated energy systems to reduce costs and environmental harm. The project required expertise directly within Prof. Farid's scope of research. However, while Prof. Farid volunteered to work on the project, Dartmouth ignored his entreaties and did not staff him on the projects.

12.  In 2019, Thayer conducted a faculty search and interviewed a tenure-track candidate (non-Muslim) with a similar expertise as Prof. Farid. After reviewing the professor's candidate file, Prof. Farid expressed an unfavorable opinion of the candidate after being asked his opinion. Although he was told that his opinion would be critically important because of his similar expertise to the candidate, she was recommended for appointment and offered a position.

13. Dartmouth has failed again and again to follow its own policies and procedures during Prof. Farid's employment.

14. As stated above, although he was appointed as an associate professor, he received a six-year tenure track via two three-year terms rather than a four-year appointment per the Faculty Handbook.

15. Under the Faculty Handbook, a tenure-track faculty member who welcomes a new child receives an extension of his or her tenure clock of one year. This extension does not need a request but happens automatically. Prof. Farid and his wife, Prof. Khayal, had two children during his six-year tenure-track period but he did not receive any automatic extensions as a result.

16. In 2017, Prof. Farid had a family emergency involving his sister who lived in Oman and whose then ex-husband was abusing a legal process in that country to take advantage of her. She was essentially kidnapped. Prof. Farid had to take a leave from campus to help his sister. The reason for his leave was generally known among his colleagues in the Engineering Department at Thayer.

17. When Prof. Farid returned from his leave, he observed that his colleagues in the Engineering Department treated him differently. They were less friendly, colder, and more distant. Subsequently, at least one colleague stated that he did not believe that he could work on a grant proposal with Prof. Farid because Prof. Farid was born in the Middle East, which was incorrect, as Prof. Farid was born in the United States (the grant required all grant recipients to be U.S.-born).

18. Upon information and belief, colleagues in the Engineering Department have declined to collaborate with Prof. Farid on research projects, grant proposals, and other scholarship endeavors because of his religion and/or national origin.

19. In fact, although Prof. Farid has collaborated with senior and experienced colleagues on grant proposals and research papers at other prestigious institutions across the country, including MIT, not a single tenured colleague in the Engineering Department has sought to collaborate with Prof. Farid on a research project or paper since his appointment despite his invitations to the same.

20. Certain professors in the Engineering Department have tried to actively sabotage Prof. Farid's relationship with his graduate students.

21. Prof. Farid received positive performance evaluations each year. The evaluations reflected areas for improvement and areas of positive performance but most importantly that he was on track for tenure.

22. In March 2020, when the COVID-19 pandemic began, Dartmouth granted all tenure-track professors a one-year extension on their tenure clock. As a result, Prof. Farid had two extra years on his tenure clock from his original six years that he had upon appointment in 2015, as Dartmouth had previously granted Prof. Farid a one-year extension on his tenure clock because of his leave to assist his sister.[1]

23. In the spring semester 2020, Prof. Farid began discussing his tenure case with Thayer Associate Dean Laura Ray and Dean Alexis Abramson. He had discussions with the Dean's office on his tenure case around the end of the academic year. This year, which was the end of his fifth year, Associate Dean Ray and Dean Abramson encouraged him to submit his dossier for tenure. This would have been the normal schedule for his tenure review had he not received two one-year extensions for tenure.

24. Prof. Farid submitted his dossier for tenure in or around October 2020, unaware that by submitting prior to the end of his tenure clock, he did not have another opportunity to apply again if his submission was unsuccessful according to the tenure review policy.

25. On June 1, 2021, Dartmouth notified Prof. Farid that he was not awarded tenure and he was offered a terminal year appointment.

26. The denial of tenure to Prof. Farid resulted from numerous procedural errors in the processing of his tenure case that would not have occurred but for his national origin and/or religion, and/or from reviewing his case with more scrutiny than it otherwise would have been due to his national origin and/or religion. In short, Prof. Farid alleges that Dartmouth denied tenure to him due to procedural errors and/or based on substantive grounds because of impermissible discriminatory factors.

*Procedural Errors*

27. Under the Faculty Handbook, a tenure-track professor can submit for tenure review in his or her sixth year, and only can submit early in extraordinary circumstance. Because

---

[1] However, he should have had another two years on his tenure clock as a result of having two children during that time period. *Supra* ¶15.

Prof. Farid was approaching his sixth year, he was not submitting early, but because he had received two one-year extensions, he was also not submitting for review at the end of his tenure clock; he still had two more years before he was required to submit for review. This fact is significant because a professor can only submit for tenure once; if he or she is denied tenure, the decision results in a terminal one-year appointment under the tenure review policy.

28. The tenure review policy in the Faculty Handbook has sections titled Guide to Candidate and Guide to Department or Program. The rule that a denial of tenure results in a terminal-year appointment only appears in the Guide to Department or Program section. It does not appear in the Guide to Candidate section.

29. The tenure review policy also requires the Associate Dean to meet with a candidate applying for tenure at the beginning of the process to explain the procedures. Associate Dean Ray discussed the procedures several times with Prof. Farid but never explained that a denial of tenure results in a terminal appointment.

30. The tenure review policy requires that a candidate for tenure have a classroom visit during his or her tenure review year, recognizing that student evaluations are imperfect measure of teaching effectiveness. In the 2020-2021 academic year, Prof. Farid taught remotely due to the COVID-19 pandemic, and while he invited members of his "review committee" to visit his Zoom classroom, none did.

31. The *de facto* tenure review policy provides that the tenure committee[2] that reviews a candidate's dossier and makes the initial recommendation consist of full professors only. Prof. Farid's tenure committee consisted of full professors and associate professors.

32. The tenure review policy allows a candidate to seek to raise issues of procedural error with the Dean when she discusses the tenure committee's recommendation with him prior to forwarding the recommendation to the Committee Advisory to the President. Prof. Farid attempted to raise procedural error issues with Dean Abramson when he learned that he did not receive tenure but received no response.

*Internal Procedural Appeal*

33. On September 1, Prof. Farid filed an appeal challenging the procedural errors of his tenure case with Dartmouth College.

---

[2] Under the tenure review policy, the "tenure committee" refers simply to the members of the faculty within the candidate's department who vote on the initial recommendation for tenure.

5

34. On October 28, the Review Committee[3] issued a decision on the procedural appeal, unanimously finding that "procedural errors occurred that could reasonably have affected [Prof Farid's] tenure case." Specifically, the Review Committee found that the Associate Dean did not explain the ramifications of applying for tenure when Prof. Farid did, that a new set of tenure procedures specific to Thayer were not clearly defined, that the conference between Dean Abramson and Prof. Farid on procedural errors did not occur as requested, and that Prof. Farid was treated like an assistant professor rather than an associate professor.

*Disparate Treatment*

35. One of the primary grounds for denying Prof. Farid tenure offered by Dartmouth, as explained to him by Dean Abramson was his record of funding and research expenditures.

36. Assistant Professor Vikrant Vaze, who is non-Muslim and not of Arab-Egyptian national origin, was awarded promotion, tenure, and an endowed professorship in 2020 at Thayer despite having a similar record of funding and an inferior record of scholarly output as Prof. Farid.

37. Another ground for denying Prof. Farid tenure was teaching effectiveness. However, Dartmouth only used student evaluations of teaching (SETs) to evaluate Prof. Farid's teaching effectiveness. As recently as May 2018, Thayer recognized in a presentation to faculty that SETS may not adequately measure the effectiveness of teaching and often carry inherent bias. Thayer faculty received a similar presentation during a faculty meeting on June 2, 2021, explaining that SETs are inherently unreliable and rife with implicit bias.

38. According to Dartmouth Professor Scott Pauls, the Director of Department for the Center of Learning: "SETs exhibit bias in all sorts of ways and therefore are not reliable comparative instruments *even when comparing an instructor to themselves!*" (Emphasis in original.) "The literature is just about as close to unanimous as it can be on the point that personnel decisions should be based on more than just a faculty member's course evaluations."

39. When Prof. Farid's classroom has been observed, he has received positive reviews that do not match his student evaluations. The classroom observations were passed onto

---

[3] This Review Committee is a distinct committee from the "review committee" involved in the tenure process. It is convened for the purpose of hearing appeals related to tenure review. The "review committee" in the tenure process gathers information to pass onto the "tenure committee."

6

his tenure committee. This is why he felt it was particularly important for the "review committee" to make a virtual visit to his Zoom classroom during the 2020-2021 academic year.

*Post-Appeal Retaliation*

40. After having his tenure case denied and submitting his internal appeals, Prof. Farid requested that Dartmouth grant a sub-award to another university for the Arctic Resilient Intelligent Integrated Energy System project (ARIIES) for which he was lead project manager to allow him to continue working on the project after his appointment at Dartmouth ended.

41. Prof. Farid drafted the grant proposal for ARIIES, which uses his scientific expertise to study and design integrated energy systems on military bases to reduce costs and improve efficiency. It is one of three projects funded by $3.0 million in federal grants.

42. It is common for universities to grant sub-awards to professors who are leaving and similarly allow departing professors to transfer research funds to new universities or research institutions.

43. Dartmouth does not have another professor with the expertise to continue ARIIES, yet it still denied Prof. Farid the sub-award and does not intend to continue the project. Yet it is contractually bound with the grant sponsor, Cold Regions Research and Engineering Laboratory (CRREL), to either complete the project or return the project funds. Upon information and belief, Dartmouth intends to return the project funds rather than continue the project.

44. Dartmouth's action in denying Prof. Farid the sub-award and not allowing him to transfer his research funds outside of the College was taken in retaliation for Prof. Farid raising claims of discrimination.

45. Dartmouth's action in denying Prof. Farid the sub-award and not allowing him to transfer his research funds outside of the College will cause substantial harm to Prof. Farid's effort to find suitable employment following the end of his appointment with Dartmouth.

*Claims*

46. By the actions described above, Dartmouth College violated Amro Farid's rights under New Hampshire Law Against Discrimination, RSA354-A:7, by, *inter alia,* denying him tenure based on his national origin and/or religion. This claim is also raised under Title VII to the Civil Rights Act of 1964.

7

47.  By the actions described above, Dartmouth College violated Amro Farid's rights under New Hampshire Law Against Discrimination, RSA354-A:19, by, *inter alia,* retaliating again him for exercising a right guaranteed under the Law Against Discrimination by refusing to grant the sub-award and allow him to transfer his research funds. This claim is also raised under Title VII to the Civil Rights Act of 1964.

48.  Prof. Farid alleges damages in the form of lost income, emotional distress, loss of reputation and professional harm, and other damages to be proven at trial.

000013

LAW OFFICE OF JOSEPH L. SULMAN, ESQ.
391 TOTTEN POND ROAD, SUITE 402
WALTHAM, MASSACHUSETTS 02451

TEL. 617-521-8600
FAX. 866-514-4839
jsulman@sulmanlaw.com

November 29, 2021

**VIA PRIORITY MAIL**
New Hampshire Commission for Human Rights
COMPLAINT INTAKE
2 Industrial Park Drive
Building One
Concord, NH 03301

      **RE:    Charge of Discrimination: Amro Farid, Ph.D.**

Dear Sir/Madam:

    As counsel for Complainant Amro Farid, please accept this Charge of Discrimination with attached particulars on behalf of the Complainant.

    Please do not hesitate to contact me if you have any questions.

                  Very truly yours,

                  Joseph L. Sulman

cc:    Client (via email)

RECEIVED
NOV 30 2021
NH Commission for Human Rights

EEOC FORM 131-A (11/09)

# U.S. Equal Employment Opportunity Commission

| | |
|---|---|
| | **PERSON FILING CHARGE**<br><br>**Amro Farid** |
| **TRUSTEES OF DARTMOUTH COLLEGE**<br>63 South Main Street, Ste 301<br>Hanover, NH 03755 | **THIS PERSON** *(check one or both)*<br>[X] Claims To Be Aggrieved<br>[ ] Is Filing on Behalf of Other(s) |
| | **EEOC CHARGE NO.**<br>**16D-2022-00027** |
| | **FEPA CHARGE NO.**<br>**ENOF(R) 0027-22** |

**NOTICE OF CHARGE OF DISCRIMINATION** IN JURISDICTION WHERE A FEP AGENCY WILL INITIALLY PROCESS
*(See the enclosed for additional information)*

THIS IS NOTICE THAT A CHARGE OF EMPLOYMENT DISCRIMINATION UNDER

[X] Title VII of the Civil Rights Act (Title VII)   [ ] The Equal Pay Act (EPA)   [ ] The Americans with Disabilities Act (ADA)

[ ] The Age Discrimination in Employment Act (ADEA)   [ ] The Genetic Information Nondiscrimination Act (GINA)

HAS BEEN RECEIVED BY

[ ] The EEOC and sent for initial processing to _____
*(FEP Agency)*

[X] The   New Hampshire Commission for Human Rights   and sent to EEOC for dual filing purposes.
*(FEP Agency)*

While EEOC has jurisdiction (upon expiration of any deferral requirement if this is a Title VII, ADA or GINA charge) to investigate this charge, EEOC may suspend its investigation and await the issuance of the Agency's final findings and orders. These findings and orders will be given weight by EEOC in making its own determination as to whether reasonable cause exists to believe that discrimination has occurred.

You are therefore encouraged to cooperate fully with the Agency. All facts and evidence provided by you to the Agency will be considered by EEOC when it reviews the Agency's final findings and orders. In many cases EEOC will take no further action, thereby avoiding the necessity of an investigation by both the Agency and EEOC. This likelihood is increased by your active cooperation with the Agency.

As a party to the charge, you may request that EEOC review the final findings and orders of the above-named Agency. For such a request to be honored, you must notify EEOC in writing within 15 days of your receipt of the Agency's final decision and order. If the Agency terminates its proceedings without issuing a final finding and order, you will be contacted further by EEOC. Regardless of whether the Agency or EEOC processes the charge, the Recordkeeping and Non-Retaliation provisions of the statutes as explained in the enclosed information sheet apply.

For further correspondence on this matter, please use the charge number(s) shown above.

Enclosure(s): Copy of Charge

**CIRCUMSTANCES OF ALLEGED DISCRIMINATION**

[ ] Race   [ ] Color   [ ] Sex   [X] Religion   [X] National Origin   [ ] Age   [ ] Disability   [X] Retaliation   [ ] Genetic Information   [ ] Other

**See enclosed copy of charge of discrimination.**

| Date | Name / Title of Authorized Official<br><br>**Judy A. Keenan,**<br>**District Director** | Signature |
|---|---|---|

000015