LAW OFFICE OF JOSEPH L. SULMAN, ESQ.
391 TOTTEN POND ROAD, SUITE 402
WALTHAM, MASSACHUSETTS 02451

_____

TEL. 617-521-8600
FAX. 866-514-4839
jsulman@sulmanlaw.com

Monday, May 17, 2021

**VIA ELECTRONIC MAIL (Alexis.R.Abramson@dartmouth.edu)**
Dean Alexis Abramson
Thayer School of Engineering
14 Engineering Drive
Hanover, NH 03755

    **RE:    Professor Amro Farid**

Dear Dean Abramson:

    This office represents Professor Amro Farid regarding his tenure review. We provide this letter under both the Thayer School of Engineering Faculty Handbook, Section 9.F, §§ 13, 17, and the Handbook of the Faculty of Arts & Sciences, Page 37, Par. 6 (collectively, the "tenure policies")[1] to raise procedural questions and irregularities in the anticipation that you will ask the Committee on Appointment and Promotion (CAP) to delay its deliberations on Dr. Farid's case for tenure, as contemplated by the foregoing provisions, until these concerns are sufficiently addressed.

    **<u>Irregularity No. 1</u>**

    The first procedural irregularity concerns the timing of Dr. Farid's tenure review. As you know, he joined Dartmouth in the fall of 2015; under the tenure policies, his tenure review normally would occur during his sixth year as associate professor, which would be the 2020-2021 academic year. However, Dr. Farid received two extensions on his tenure clock: first in 2018 due to a personal situation and second in 2020 due to the COVID-19 pandemic (as provided to all tenure-track professors). His tenure clock therefore does not end until 2022-2023.

    During the 2019-2020 academic year, Dr. Farid discussed tenure at various times with Associate Dean Laura Ray and yourself. Dean Ray made it clear that she was aware that Dr. Farid's tenure clock did not end for another two years. In an October 15, 2019 email, she referred to his tenure review "coming a couple years from now." In May 2020, Dr. Farid began thinking about applying for tenure in the fall of 2020, at the beginning of his sixth year in his rank but before his tenure clock ended, and discussed the option with you and Dean Ray. He exchanged several emails with you and Dean Ray over the next two months. Eventually, you met with Dr.

_____

[1] It is not clear whether Dr. Farid's tenure application was processed according to the tenure review procedure outlined in the Arts & Sciences Faculty Handbook or the Thayer School Faculty Handbook, which was published in January 2021, as Dr. Farid has received mixed messages on which procedure applies.

LAW OFFICE OF JOSEPH L. SULMAN, ESQ.

Farid and indicated that you supported his moving forward with his tenure review. This was confirmed in a July 5, 2020 email from Dean Ray to Dr. Farid.

Under the tenure policies, Dean Ray was required to meet with Dr. Farid at the beginning of this process to review the procedures for tenure contained in the Arts & Sciences Faculty Handbook under Guide to Candidate on p. 34-35. Although a meeting occurred, the *complete* procedures were not adequately explained. The "Guide to Candidate" under the Arts & Sciences tenure policy, which was the only policy available last summer, does not state anywhere that the candidate *only* has one opportunity to be considered for tenure. The *only* reference to this is in "Guide to Department or Program" in one sentence stating that a denial of tenure will result in a one-year terminal contract, but this sentence is buried in a long paragraph about the CAP review.

As part of the required review of the procedures, it was incumbent upon Dean Ray to thoroughly explain to Dr. Farid the ramifications of his decision to apply for tenure prior to the end of his tenure clock. While some professors may know that tenure review is a one-time opportunity, it appears that you and Dean Ray assumed Dr. Farid knew this. This had significant and possibly irreparable consequences. By telling Dr. Farid that you supported his moving forward with tenure on July 5, you strongly suggested that his record, despite not being timely for review, would be sufficient for tenure.  Instead of advising Dr. Farid about the risk of applying for tenure early, you and Dean Ray encouraged him to apply. Now regardless of whether he would have had more likelihood of success in two years, he undoubtedly lost two years of employment in the event of a tenure denial.

Moreover, by suggesting that Dr. Farid move forward with his tenure in consultation with Dean Ray, you gave the impression that his was an "exceptional case." Under the applicable tenure policies, only "exceptional cases" can receive consideration for tenure prior to the candidate's sixth year. Under the Thayer handbook, these "exceptional cases" involve requesting a recommendation from the Dean, who "may consult with the Thayer Senior Associate Dean for Faculty Development and other tenured faculty members in considering such a request." This process differs from the process for "exceptional cases" under the Arts & Sciences handbook, where "exceptional cases" must receive a recommendation from "the appropriate Associate Dean in consultation with the tenured members of the department or program." The July 5, 2020 email from Dean Ray to Dr. Farid indicated that Dr. Farid had received a recommendation from you – the Dean of Thayer – in consultation with Senior Associate Dean of Faculty Development Laura Ray for an early tenure review, which warrants a reasonable belief that Dr. Farid was an "exceptional case" under the Thayer policy.

**<u>Irregularity No. 2</u>**

The second basis for procedural error is that Dr. Farid's tenure is being considered during the COVID-19 pandemic, and there does not seem to be any consideration for the effect of the pandemic on his tenure review. Teaching during the 2020-2021 academic year was truly a novel experience, one that is not likely to be repeated. In all previous years, professors taught students in person, and in coming years, this will continue to be the norm at Dartmouth unless the university takes a dramatic change in focus.

TDC-0016504

LAW OFFICE OF JOSEPH L. SULMAN, ESQ.

Dr. Farid recognizes that he received less than satisfactory student evaluations in certain courses during his initial years at Dartmouth, but he has improved those evaluations over the last few years. Notably, Professor Petra Bonfert-Taylor observed Dr. Farid's ENG 22 class in October 2019 and came away with a strikingly different perspective than reflected in previous student evaluations. Dr. Bonfert-Taylor noted that Dr. Farid appeared "incredibly dedicated to his students' learning." In her opinion, some of the negative feedback from prior evaluations could have been due to Dr. Farid's "unconventional method" of making tests and assignments extremely difficult and not expecting students to complete them. She did not believe students understood this method and were under the impression that they did not learn as much as they actually did. She noted that she had worked with other faculty members who wanted their numbers improved without actually changing anything, but Dr. Farid was different. As she noted, Dr. Farid intended to start implementing some of her suggestions.

Due to the constraints imposed by the pandemic, Dr. Farid needed to dramatically change his method of teaching during the current academic year. He pre-recorded lectures for remote classes, then used break-out rooms to facilitate small group discussions. He asked for his class to be observed, but this request went unanswered.  Furthermore, the Zoom technology did not allow for offline observation of break-out rooms.  Unlike last year where Dr. Bonfert-Taylor personally observed his ENG-22 class, Dartmouth only had the student evaluations to gauge his improvement. This is a clear violation of the tenure policies. Section 9.F, § 9 of the Thayer handbook envisions the Chair of the review committee "arrang[ing] visits by at least one Thayer Faculty member to [Dr. Farid's] classes to conduct a more in-depth assessment of the quality of the individual's teaching." That did not happen and adversely affected Dr. Farid's tenure case in comparison to those of other faculty members in non-pandemic years. It is well known that student evaluations can be unreliable as barometers of effective teaching, which you and others at Dartmouth have recognized. Particularly in Dr. Farid's case, the reliance on student evaluations alone for this past academic year presents two problems: first, the class environment was artificial and not representative of Dr. Farid's typical teaching environment; and second, historical precedent shows a dramatic divergence between professional observation and student reaction to his teaching, and there is no reason to believe it would have been otherwise this year.

To be clear, Dr. Farid acknowledges that student evaluations are one consideration during tenure review, but *prior* to the pandemic his evaluations had markedly improved from earlier in his career. His 2019 ENG 175-Spring evaluations are overwhelmingly positive *(E.g.,* "Great lectures and tailoring the class material to the people in it." "Professor Farid made himself very available outside of class to discuss any questions on the problem sets or topics covered in class."). His 2019 ENG 22-Fall evaluations include numerous positive comments about Dr. Farid's teaching with very specific remarks about his methodology, adaptability, and kindness to students. (*E.g.,* "During the middle of the term the professor switched to giving the whole problem set all at once at the beginning of the week which was much preferable." "He loved feedback and always accepted it while some profs at Dartmouth can be very aggressive with the feedback he received. I also think having a lot of practice problems is ideal to any pset heavy class and were great to have for reference." "I live and die by his 7 step plan. Originally I didn't trust him on it, but it is extremely effective." "Professor Farid was incredibly open to spending his own time on the course. He consistently added more work to his own Engs 22 course load and was very flexible in making himself available for students to work with him. It is clear

TDC-0016505

LAW OFFICE OF JOSEPH L. SULMAN, ESQ.

Professor Farid has put substantial thought into how to best approach the subjects of the course, and it was evident in both his teaching style and ability to frame our learning.")

These past evaluations are not offered at this time as a substantial challenge to the tenure decision, but to show that it is a procedural mistake to rely on the student evaluations from the unprecedented 2020-2021 academic year.

The pandemic posed unique challenges in the area of funding as well. Since academic funding derives predominantly from grants awarded by government agencies, the slowdown in government operation caused by the pandemic significantly decreased the availability of funding during the current academic year. Like his teaching evaluations, Dr. Farid's past record of funding prior to the 2020-2021 should have been used as the barometer to measure his scholarship. Again, this is not offered at this time as a substantive challenge to the tenure decision, but to demonstrate that the procedure used was unfair and flawed.

**Irregularity No. 3**

The third procedural error is that it appears tenured associate professors were included in the tenure committee that voted on whether to recommend Dr. Farid for tenure. The Arts & Sciences tenure policy was the only tenure policy in effect when the tenure committee was formed for Dr. Farid's tenure case and this policy only permits full professors with tenure to sit on tenure committees for associate professors. This is confirmed in a September 11, 2020 email from Dean Ray to Dr. Farid, where she informs him that Associate Professor Jason Stauth would be removed from the tenure committee and replaced with Full Professor John Zhang. However, we understand that full and associate professors participated in the tenure committee review.

Thank you for considering these procedural irregularities and how they adversely affected the review of Dr. Farid's tenure case. This information shows that in the absence of the COVID-19 pandemic and with complete information on the procedures for applying for tenure, Dr. Farid's opportunity for tenure would have significantly improved. He should be permitted to withdraw his tenure application and re-submit in two years or, at the very least, complete his current contract with the tenure extensions granted through the 2022-2023 academic year.

Very truly yours,

Joseph L. Sulman

Encl.    Client
         Laura Ray, Ph.D.

TDC-0016506