1

```
                    VOLUME:  I
                    PAGES:  1-97
                    EXHIBITS:  1-12
```

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

CASE 23-CV-426-SM

*****************************

AMRO FARID,                    )
      Plaintiff          )
                               )
  vs.                          )
                               )
TRUSTEES OF DARTMOUTH COLLEGE,)
      Defendant          )

*****************************

DEPOSITION BY ZOOM OF PRASAD V. JAYANTI, a witness called on behalf of the Plaintiff, pursuant to the Massachusetts Rules of Civil Procedure, before Kelly G. Rae, a Notary Public in and for the Commonwealth of Massachusetts, at Dartmouth College, 15 Thayer Drive, Hanover, New Hampshire, on Thursday, March 20, 2025, commencing at 12:34 p.m.

```
 1   APPEARANCES:
 2
 3   LAW OFFICE OF JOSEPH SULMAN
       (by Joseph Sulman, Esquire)
 4    255 Bear Hill Road, Suite 204
      Waltham, Massachusetts   02451
 5    jsulman@sulmanlaw.com
      for the Plaintiff;
 6
 7   DEVINE MILLIMET
       (by Pierre Chabot, Esquire)
 8    111 Amherst Street
      Manchester, New Hampshire  03101
 9    pchabot@devinemillimet.com
      for the Defendant.
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
```

1                     I N D E X
2    DEPONENT:                                PAGE
3    PRASAD V. JAYANTI
4      Examination by Mr. Sulman               5
5
6
7                    E X H I B I T S
8    NO.                                      PAGE
9     1     Biography of Prasad Jayanti.       15
10    2     PEERS Report.                      18
11    3(i)  Email chain.                       41
12    3     Email chain.                       42
13    4     Dartmouth College Research
            Misconduct Policy and
14          Procedure.                         45
15    5     Email chain.                       51
16    6     Email chain.                       53
17    7     Email chain.                       55
18    8     Email chain.                       59
19    9     Email chain.                       64
20    10    Email chain.                       71
21    11    Email chain.                       76
22    12    Meeting minutes May 2, 2023.       88
23
24

```
 1            S T I P U L A T I O N S
 2        IT IS HEREBY STIPULATED AND AGREED by
 3   and between counsel for the respective
 4   parties that the Witness will read and sign
 5   the deposition transcript under the pains
 6   and penalties of perjury; and that the
 7   reading and signing is deemed waived if not
 8   accomplished within 30 days of transcript
 9   delivery.
10         It is further stipulated and agreed
11   that all objections, except as to the form
12   of the questions, and motions to strike
13   will be reserved until the time of trial or
14   pretrial hearing.
15                  *  *  *  *  *
16            THE COURT REPORTER:  Will all
17   counsel please stipulate to the swearing in
18   of the witness remotely.
19            MR. SULMAN:  Yes.
20            MR. CHABOT:  Yup, that's included
21   in the stipulations from Dr. Madden's
22   deposition, but yes, of course.
23                    *  *  *
24            PRASAD V. JAYANTI, a witness
```

5

1   called for examination by counsel for the
2   Plaintiff, having been satisfactorily
3   identified by the production of her/his
4   driver's license, being first sworn by the
5   Notary Public, was examined and testified
6   as follows:
7                    DIRECT EXAMINATION
8   (By Mr. Sulman)
9   Q. Good afternoon, sir.
10  A. Good afternoon.
11  Q. Can you please state and spell your name
12     for the record?
13  A. It's Prasad Jayanti. Spelled P-r-a-s-a-d,
14     J-a-y-a-n-t-i.
15  Q. Professor, how are you currently employed?
16  A. I'm a professor of computer science in the
17     Department of Computer Science at Dartmouth
18     College.
19  Q. Are you a full professor or associate
20     professor?
21  A. Full professor.
22  Q. With tenure?
23  A. With tenure, yes.
24  Q. How long have you been employed by

78

1  A.   Yes, I do.
2  Q.   What was the roadblock?
3  A.   The two that I mentioned, the volume of the
4      material that we had to process and the
5      expansion of the scope of the case because
6      of the litigation that Farid has with
7      Dartmouth on the other matters.
8  Q.   You said -- I'm confused. You said "the
9      expansion of the scope." What do you mean
10     by that?
11  A.   Yeah, the legality was brought into
12     picture. Legal notices and so on, so this
13     was no longer just an academic committee
14     looking into an academic collaboration
15     between a student and their professor, so
16     the scope of it has expanded, so these too
17     were concerns on my mind and so.
18  Q.   What made you think the investigation had
19     expanded into an issue relating to the
20     lawsuit?
21          MR. CHABOT: Object to the form.
22     You can answer.
23  A.   Yeah, again, I don't remember the timelines
24     or the sequence of events, but at some

1       point, as I recall, we were made aware that
2       a lawyer had -- that the student received a
3       notice from Farid's lawyers and so it was
4       no longer just an academic thing, and at
5       some other point, again I don't remember
6       the relative timing of all of these things,
7       I don't have a recollection of that, at
8       some other point we were made aware of
9       Professor Farid's litigation about his
10      tenure with the college and so I don't
11      remember the timeline of -- or the sequence
12      in which all of these things happened,
13      including the email that you're drawing my
14      attention to, but all of these things
15      happened in a relatively narrow window of
16      maybe three or four months.
17  Q.  So as of, it seems like, January 2024, the
18      concerns about the scope of the
19      investigation and some relation to an
20      existing lawsuit was on your mind, is that
21      fair to say?
22              MR. CHABOT:  Object to the form.
23      You can answer.
24  A.  Whether it was January or whether it was

80

1  sooner, whether it was slightly later, I
2  cannot be too sure -- when you say January,
3  whether there's any importance to that
4  time.  I cannot be certain that the
5  recollection is January, but sometime after
6  voluminous responses and the expansion of
7  the scope of the thing, one or both of
8  these things have occurred and I began to
9  become concerned.
10 Q. When did you resign from the committee?
11 A. I'm not sure what the word "resign" --
12    whether the word "resign" is important.
13    Resign, withdraw, request to withdraw.
14 Q. I don't mean any significance by the word,
15    I just mean --
16 A. If you don't attach any significance to the
17    word, then I would say maybe approximately
18    a year, plus or minus a couple of months,
19    and I don't remember the timelines but
20    around that time maybe.
21 Q. You're saying about March 2024?
22 A. Again, when you say March 2024, I'm not
23    saying anything with that level of
24    specificity because I don't recall things

81

```
 1       that well, but I want to say just in the
 2       interest of helping you get an answer to
 3       your question, approximately a year, plus
 4       or minus two or three months, because I
 5       don't quite remember the exact timelines.
 6  Q.   Well, just to clarify, it's not your job to
 7       help me, but I just want your best memory.
 8       So when you said about a year ago, that's
 9       why I said March.
10              MR. CHABOT:  Object to the form.
11  A.   It is important to underscore that I'm not
12       a native English speaker and when I say
13       "help," it is in the context of you're a
14       human being and I'm a human being and when
15       you ask a question I sometimes feel it is
16       polite to respond to you, but at the same
17       time if I'm unsure of some timeline, I say
18       that specifically that I'm unsure, and when
19       I say "approximately a year," that is to
20       tell you that it is not two or three years
21       ago, but it's a year ago, plus or minus a
22       few months with a wide tolerance, so when
23       you repeat it with March of 2024, I feel
24       uneasy because I don't want you to go down
```

1   to that level of specificity with what I
2   said.
3 Q. I understand that.  I try to say about
4   March, so give or take a few months or so.
5 A. Again, not with that specificity, but yes,
6   sure.
7 Q. What was the process of withdrawing from
8   the committee.  How did you go about doing
9   that?
10          MR. CHABOT:  Object to the form.
11 A. How did I go about doing that?
12 Q. Yes.
13 A. By expressing my -- by expressing in the
14   proceedings of the committee when Henrike
15   and her assistant Nicole were also present,
16   by expressing my inability to continue to
17   serve on the committee for the reasons I
18   just elaborated.
19 Q. Was there any formal notice of withdrawal
20   that you had to file or submit?
21          MR. CHABOT:  Object to the form.
22 A. I did not submit some physical sheet of
23   paper, if that was the question.
24 Q. Or an email to Director Frowein saying "I'm

83

1      withdrawing," that kind of thing?
2  A.  I do not recall sending such an email to
3      anyone, but I had made it very clear that I
4      would want to withdraw from continuing to
5      serve on the committee, which was honored,
6      respected and I respect that.
7  Q.  Did you feel that you asked permission to
8      withdraw or did you simply tell them you
9      were withdrawing?
10 A.  Again, withdraw is not necessarily the word
11     that I used, so, again, don't attach any
12     importance to words like "withdraw,"
13     "resign," but I had made it very clear that
14     I'm not interested in continuing to serve.
15 Q.  So you expressed -- you made it clear that
16     you weren't interested in continuing and
17     when you did that, is it fair to say
18     Director Frowein ultimately accepted that
19     and said they would find someone else?
20              MR. CHABOT:  Object to the form.
21 A.  It was honored, I mean, in the sense
22     that -- it was honored.  I requested to
23     withdraw and I recall some sort of
24     communication.  I don't remember the mode

1  of the communication that helped me
2  understand that I have withdrawn in the
3  past.
4 Q. Are there any other reasons for your
5  request to withdraw, other than the volume
6  of material and expansive scope of the
7  investigation?
8         MR. CHABOT:  I'll object to the
9  form.  You can answer.
10 A. Yeah, the reasons were volume and the fact
11  that it's -- by "expansion of scope," I
12  meant that it was no longer just a matter,
13  a university committee, but it became an
14  issue of litigation, so those were the
15  reasons.
16 Q. When you say "it became an issue of
17  litigation," did you mean that you feared
18  your own liability or you just thought it
19  became too complicated?
20 A. Both.
21 Q. When you say you feared your own liability,
22  liability in what way?
23         MR. CHABOT:  Object to the form.
24 A. Liability in the form of having to spend

85

1       enormous amounts of time talking to
2       lawyers, answering lawyers, and going to
3       the courts and so on, and I had no time for
4       it given my other obligations
5       professionally and personally.
6  Q.  Just to push down on that a little bit.  Do
7       you mean "liability" in that you might
8       personally be sued by either party in the
9       investigation or simply being a witness?
10 A.  In any form.  I cannot answer your question
11      specifically because it's not like I spent
12      hours of time thinking about whether I'd be
13      sued or be a witness, but I've spent a lot
14      of time already and I was not in a position
15      to give it enormous amounts of time in the
16      future.
17 Q.  One more question on this.  Did you have
18      any thought that "Oh, Mr. Hegde might sue
19      me later" or "Professor Farid might sue me
20      later" or was it general fear of being
21      involved later?
22             MR. CHABOT:  Object to the form.
23 A.  First of all, I would not characterize it
24      as fear, and if you can repeat the rest of

```
 1        the question.
 2   Q.   Was it -- withdraw the word "fear".  Was it
 3        concern or an issue of either Mr. Hegde
 4        might sue me later or Professor Farid might
 5        sue me later or I just might be involved in
 6        some litigation later?
 7             MR. CHABOT:  Object to the form.
 8   A.   You're asking A or B or C.  If any of A or
 9        B or C, the answer is true, so let me
10        answer yes and you can go to the individual
11        clause now.
12   Q.   So is it all of the above?
13   A.   No.
14   Q.   Which one is it?
15   A.   Can you repeat the individual clauses?
16   Q.   So were you concerned, I use the term very
17        broadly, about either Mr. Hegde naming you
18        in a lawsuit or Professor Farid naming you
19        in a lawsuit and/or simply being caught up
20        in litigation later as a witness?
21   A.   I heard this question as identical to the
22        previous question, and if it was so, the
23        answer is yes, because again you asked A or
24        B or C and my answer is yes.
```

87

1  Q.  Well, can you answer?  Is it A or B or is
2      it C?
3              MR. CHABOT:  Object to the form.
4  A.  My answer is for A or B or C, yes.
5  Q.  My question is were you concerned about A?
6  A.  What A happens to be?
7  Q.  I just said it, sir.  Were you afraid of
8      being caught up in a lawsuit brought by
9      Professor Hegde?
10 A.  I would not characterize it as fear or
11     afraid of but you used the word "concern"
12     before which appears right to me, but if
13     the question is am I concerned about -- was
14     I concerned about being sued by Hegde, the
15     answer is no.
16 Q.  Were you concerned about being sued by
17     Professor Farid?
18 A.  I cannot answer that question because I
19     don't know that I thought in terms of being
20     sued.
21 Q.  Were you concerned about being caught up in
22     a lawsuit brought by Professor Farid?
23 A.  I was concerned that I could be -- I might
24     have to spend a lot of time in litigation.

88

```
 1  Q.   Brought by Professor Farid?
 2  A.   Yes.  I hope you don't mind me eating a
 3       banana.
 4  Q.   Not at all, sir.
 5  A.   Thank you.
 6  Q.   I'm sending you Exhibit 12.  Let me know
 7       when you have it open.
 8                (Meeting minutes May 2, 2023
 9       marked Exhibit No. 12 for Identification.)
10  A.   I have it in front of me.
11  Q.   This appears to be minutes from the
12       May 2, 2023 meeting of the research
13       misconduct investigation committee.  I just
14       wanted you to take a minute to review it
15       and let me know if you recall anything else
16       that was said at this meeting that's not
17       reflected here?
18  A.   When you say "review it," you are expecting
19       me to read it?
20  Q.   I am, yes.
21  A.   Okay, I'll read it out because as I said,
22       I'm a very slow reader of any language,
23       English in particular, so I'll read it out,
24       which helps me.
```